PEEK, J.
 

 This is an appeal by the defendant Dailey from a judgment of conviction of the crime of burglary in the first degree.
 

 Two contentions are made on appeal: (1) That defendant’s conviction was the result of uncorroborated accomplice testimony ; and (2) that he was denied a fair trial, in that a witness for the State, a deputy sheriff, was permitted to remain in court in violation of the court’s order excluding witnesses, and the prosecuting attorney was guilty of prejudicial misconduct in his argument to the jury. Since it is the conclusion of the court that defendant’s first contention is well taken and the case must be reversed, we have limited our discussion to that issue and the evidence in regard thereto.
 

 The record discloses that on the morning of February 10, 1959, Gary Gustin, Tommy Thompson and William Glen Meyers left the latter’s home in Napa and drove to Vallejo where they picked up defendant and returned to Meyers’ home in Napa. Upon their return there were also present Harold Griffith, his common-law wife, Meyers’ common-law wife and her four children. With the exception of Thompson who was then 16 years of age, all of the men had one or more prior felony convictions. According to Thompson, who was called by the prosecution, a discussion ensued concerning the possibility of committing a burglary. Defendant suggested
 
 *484
 
 they obtain a ladder for the purpose of breaking into a market in Vallejo. Meyers offered the use of one he had, but upon inspection by defendant and Griffith it was determined to be too long for their purpose, and the idea of burglarizing the market was abandoned. Thereafter the defendant, Gustin and Thompson left Meyers’ home in Meyers’ car and drove to the victim’s house where Gustin and Thompson broke a window and entered the home. They removed an accordion, an amplifier, a high fidelity set and a revolver. After placing the articles in the car they returned to Meyers’ home. With Meyers’ assistance the three carried the stolen articles into the house and hid the amplifier, accordion and the high fidelity set in his bedroom closet and hid the gun under a davenport in the living-room. Thompson and Gustin then drove the defendant home and returned to Meyers’ residence and went to bed. A day or two later Griffith and Gustin, with the assistance of defendant, moved the stolen articles which by then had been placed in a sealed cardboard box to a home Griffith had just rented. The box, still sealed, was later discovered by police in Gustin’s bedroom and the gun was found in the basement of Griffith’s home.
 

 Meyers who also was called by the prosecution acknowledged his ownership of the station wagon which was used in the burglary and that he had been with the other parties that day and evening. He identified the items taken in the burglary as those which were brought to his home by Gustin, Thompson and defendant, and which he helped carry from the car into his home. He said he and Gustin had put the articles in a large pasteboard box which was moved the following day. He further testified that on the evening of the burglary Gustin, Thompson and defendant had stated to him that “they were going out and caper.” This he testified he understood to mean “to go out and see what they could get,’’ and that they wanted him to go along and drive his car. He refused but told them, “ ‘You can use my car if you want.’ ” This, he said, was “because there was no other car there to use.” He also testified that although he did not know exactly what the others were going to do, he did know that “they were going to go get some money ...” He further testified that when the three returned to his home with the stolen articles, he told them, “ ‘Well don’t leave it in here, put it in the bedroom where anybody comes in, they won’t see it.’ ”
 

 The remaining witnesses called by the State merely established the ownership of the articles taken and where and under
 
 *485
 
 what circumstances they were found; that Meyers’ ear was seen in the vicinity of the burglary; and that the defendant had helped in moving the articles from the Meyers’ home to Griffiths’.
 

 On rebuttal the prosecution called Norma Robinson, Meyers’ common-law wife, who testified she had seen defendant, Thompson and Gustin take the stolen articles from the car and bring them into the house.
 

 At the conclusion of the trial the court fully and fairly instructed the jury concerning the law generally as related to accomplices. The court then specifically charged the jury that: “If the crime of burglary, the commission of which is alleged in the information, was committed by anyone, then, under the evidence in this case and as a matter of law, the witness Tommy Thompson was an accomplice.”
 

 Defendant’s argument in support of his first contention is in effect that Meyers was also an accomplice as a matter of law, and that the court should have so instructed the jury; that under the instruction as given, and in particular by the use of the singular form, “an accomplice,” the instruction contains the suggestion that only Thompson could be considered as an accomplice; and that nowhere else in the instructions is it even suggested that the jury could determine any other witness to be an accomplice.
 

 Under the provisions of section 1111 of the Penal Code, an accomplice is defined as “. . . one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.” One is “liable to prosecution” for an offense if it has been committed and there is “probable cause” to believe he has committed it.
 
 (People
 
 v.
 
 Cowan,
 
 38 Cal.App.2d 231, 242 [101 P.2d 125].) The cited section further provides that “a conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . .” It is further statutory rule that "all persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission ... are principals ...” (Pen. Code, § 31.)
 

 The record shows that Meyers, by his own testimony (and his was the only testimony corroborative of that given by Thompson), knew what was being planned; that he actively
 
 *486
 
 participated in the planning; that he assisted in attempting to locate a ladder—even offered the use of his own; that he knew that a means of transportation was necessary and, with that knowledge, permitted the use of his ear, thereby making the whole so-called “caper” possible; and that following the commission of the crime he knowingly stored the stolen articles in his home. In view of such uncontradieted facts, there can be no question that Meyers’ testimony comes squarely within the provisions of sections 1111 and 31 of the Penal Code, and hence he was an accomplice as a matter of law. Therefóre, under the circumstances, it was incumbent upon the trial court to so instruct the jury, even though such an instruction was not requested.
 
 (People
 
 v.
 
 Dobkin,
 
 74 Cal.App.2d 269 [169 P.2d 729].) It necessarily follows that since the jury may well have determined, under the instructions given, that Meyers was not an accomplice and may therefore have concluded that his testimony sufficiently corroborated the testimony given by Thompson, and since an accomplice cannot corroborate another
 
 (People
 
 v.
 
 Clapp,
 
 24 Cal.2d 835 [151 P.2d 237]), the judgment must be reversed.
 

 Inasmuch as the case must be reversed for the reasons stated, it becomes unnecessary to discuss the further contentions made by defendant.
 

 The judgment is reversed.
 

 Van Dyke, P. J., and Schottky, J., concurred.
 

 Respondent’s petition for a hearing by the Supreme Court was denied June 2, 1960.